[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action to foreclose a mechanic's lien. Plaintiff is Marcel Nadeau, d.b.a. C.I.R. Defendant is Kenneth S. Kerns.
Plaintiff Nadeau is in the business of installing commercial refrigeration units. Defendant Kerns' family has been in the wholesale meat business for many years. He wanted to expand his CT Page 11956 plant as he planned to bring his sons into the business. Mr. Nadeau was recommended to handle the installation of the box refrigerators by an account of Mr. Kerns. Mr. Kerns hired Robert Bouvier of All Metal Buildings, Inc. to construct the building.
The written contract between Mr. Nadeau and Mr. Kerns, dated March 17, 1997, was for $80,000. Approximately $60,000 was for parts. This amount was advanced by Mr. Kerns. Mr. Nadeau used this money to purchase the necessary materials. The actual cost of the equipment was $60,643.50. Mr. Nadeau paid the balance. Mr. Nadeau then began inquiring as to when the equipment should be delivered, as the floor had to be to specifications to handle the refrigeration units. Mr. Kerns told Mr. Nadeau he should check with Mr. Bouvier and have the equipment delivered when he said he was ready. Mr. Nadeau contacted Mr. Bouvier and was told everything would be ready by the time the trucks arrived. When the trucks came to the site, it was immediately apparent to Mr. Nadeau and the representative from the refrigeration company that the site was not ready. Although the freezer floor was poured, it deviated substantially from the specifications in the blueprints. The cooler floor was not poured. Mr. Nadeau informed Mr. Kerns of the problem. Mr. Kerns agreed that the installation could not take place, and authorized the unloading of the materials to skids on the ground. Mr. Nadeau took the mechanical elements to his own storage area. Mr. Nadeau told Mr. Kerns of his concern that the materials would sustain weather damage and secured permission to purchase something to cover them. Mr. Nadeau purchased "tarps" at a cost of $345.80. These were then placed over everything. Mr. Nadeau checked them on a daily basis. At this time, the parties were told by the contractor that the problems would be remedied within a month and that installation could take place.
A "scissor truck" was needed for the installation. The cost of this was covered by the contract. The truck was rented for the anticipated installation. The weekly cost ($586.05) was far greater than the monthly cost. Thus, when it became apparent that the installation could not take place, and the contractor promised to have the site ready within a month, Mr. Kerns authorized renting the truck for a month at a cost of $1,282.05.
As time went on, Mr. Nadeau told Mr. Kerns that the materials needed better protection. Mr. Kerns authorized the rental of trucks for storage. Due to a trucking strike, it was more difficult and more expensive to secure the trucks than would CT Page 11957 normally be the case. Mr. Nadeau did rent trucks from T.I.P. and moved the materials inside. The cost of this rental was $5,400.00. Mr. Kerns advanced $2,200 for this. At a later date, Mr. Nadeau was sued for the balance of $3200, a judgment entered against him, and an execution issued against his account for $2,454.05, plus a $30 service fee.
On May 17, 1994, Mr. Nadeau sent a letter to Mr. Kerns notifying him that added expenses were accruing due to the contractor's failure to ready the site. In part, this letter stated that "[r]efrigeration equipment is in storage." No amount was mentioned for the cost of the storage. The letter also stated that "[p]anels stored on job site are covered with tarps, inspection will be done on a daily basis." No amount was mentioned for the cost of the inspection. The letter did state that the cost for a "technician" was 45.00 per hour port to port plus material and for a "helper" 25.00 per hour port to port plus material.
The first sign of trouble between Mr. Nadeau and Mr. Kerns occurred around July 18, 1994 when Mr. Nadeau sent Mr. Kerns a bill for the extra costs occasioned by the contractor's delay. The bill is on record as Exhibit 9. Mr. Kerns' response to this was that Mr. Nadeau should speak to his lawyer.
The site was never readied. Mr. Nadeau continued to store the five compressors. He is still storing three compressors. Two were used on other jobs in an effort to offset his losses. The value of the five units was approximately $18,000. Mr. Nadeau billed two jobs $1000 each for the compressors. The testimony showed that the units have lost value because of changes in the manufacture of these items particularly with reference to the use of the coolant freon.
Mr. Kerns takes the position that Mr. Nadeau should not have relied upon the word of the contractor that the site would be ready for the delivery of the units. Rather, he testified that Mr. Nadeau should have checked the site himself and employed his own expertise to see that that site was not ready. The court does not agree. As previously noted, Mr. Nadeau was told by Mr. Kerns to deliver when the contractor said he would be ready. Mr. Nadeau did this, and no more was required. In addition, the testimony shows that Mr. Kerns had notice there was a problem with the site before the materials were delivered and did not tell Mr. Nadeau. CT Page 11958
This case presents a very unfortunate situation in which both Mr. Kerns and Mr. Nadeau are victims of a contractor who caused all the present difficulties by virtue of his failure to fulfill his own contract. The court finds that Mr. Nadeau acted in good faith, was ready to perform his own contract, and acted to prevent further loss to Mr. Kerns with Mr. Kerns' assent.
Mr. Nadeau is entitled to foreclose on his lien for the following amount:
 Value of contract 80,000.00 Balance due for truck rental 3,200.00 Fee on execution of Nadeau Account 30.00 Rental of scissor truck 1,282.05 Cost of tarps 345.80 Bill for moving and protecting materials 5,497.00 _________ Total[1]: 90,354.85
 less amount advanced by Mr. Kerns 60,000.00 less credit for cost of scissor truck 586.05 included in contract less credit for one-half storage fee 1,812.50 less credit for sale of three compressors 3,000.00 Credit for inspection 1,300.00 _________ Total Credits: 66,698.55
Total Due: 23,656.30
There are two items with regard to the damages which have been reduced or eliminated. First is for the rental of Mr. Nadeau's premises at the rate of $125 per month to store the compressors. This bill totaled $3,625 at time of trial. The record is not clear that Mr. Kerns understood that Mr. Nadeau was charging him $125 per month for this storage. As noted herein, the record does show that Mr. Nadeau sent a letter indicating that he would be billing Mr. Kerns for this storage but does not mention an amount. Mr. Kerns denies receiving this letter. Mr. Kerns never agreed to a specific cost. The testimony shows that Mr. Kerns felt the trucks were costing too much for the storage of the other materials and that he was able to arrange for less expensive trucks. The court feels that he would have made other arrangements if he understood the cost of storing the compressors. Accordingly, the court has reduced this amount by CT Page 11959 half. Thus, the court finds the total amount due Mr. Nadeau for storage is $1,812.50.
The other item that has not been fully established is the charge for inspection. Mr. Nadeau claims "1 man two times a day @ 25.00 per hour 52 days". The letter of May 17 mentioned above does not indicate a specific amount for inspection, nor does it state that inspection will be twice per day. It merely states that inspection will be on a daily basis. Mr. Kerns stated that he was near the site and doing his own inspection. It is unlikely that he would have agreed to pay $50.00 per day for this service. In effect, he disputed the charges when the bill was ultimately rendered by referring Mr. Nadeau to his lawyer. This charge has been reduced to the cost of a "daily" inspection.
Mr. Nadeau is to return the three compressor units to Mr. Kerns. Mr. Kerns will have thirty days from the date of this decision to collect them. If this is not done, they will become the property of Mr. Nadeau.
Dunnell, J.